UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| CHAD WUOLLET, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>C&J ENERGY SERVICES, INC., DONALD GAWICK, PATRICK MURRAY, STUART BRIGHTMAN, JOHN KENNEDY, STEVEN MUELLER, MICHAEL ROEMER, MICHAEL ZAWADZKI, AMY NELSON, KING MERGER SUB CORP., and KEANE GROUP, INC.,<br><br>Defendants, | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Chad Wuollet ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.   Plaintiff brings this class action on behalf of the public stockholders of C&J Energy Services, Inc. ("C&J" or the "Company") against C&J's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, arising out of the Board's attempt to sell the Company to Keane Group, Inc. through its wholly-owned subsidiary King Merger Sub Corp. (collectively "Keane").

2.   Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading registration statement (the "S-4") to be filed with

1

the United States Securities and Exchange Commission ("SEC") on July 16, 2019. The S-4 recommends that C&J shareholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby C&J is acquired by Keane. The Proposed Transaction was first disclosed on June 17, 2019, when C&J and Keane announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which C&J stockholders will receive 1.6149 shares of Keane common stock for each share of C&J common stock that they hold (the "Merger Consideration"). The deal is valued at approximately $1.8 billion and is expected to close in the fourth quarter of 2019.

3.  The S-4 is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the S-4 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by C&J management, and the financial analyses conducted by Morgan Stanley & Co. LLC ("Morgan Stanley"), C&J's financial advisor.

4.  For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the S-4 with the SEC or otherwise causing an amendment to the S-4 to be disseminated to C&J's shareholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to C&J's shareholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5.  Plaintiff is, and has been at all relevant times, the owner of shares of common stock of C&J.

6. Defendant C&J is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 43990 Rogerdale Rd., Houston, Texas 77042. C&J common stock trades on NYSE under the ticker symbol "CJ."

7. Defendant Donald Gawick has been President, Chief Executive Officer and a director of the Company since 2016.

8. Defendant Patrick Murray has been a director of the Company since January 2017 and is the current Chairman of the Board.

9. Defendant Stuart Brightman has been a director of the Company since January 2017.

10. Defendant John Kennedy has been a director of the Company since January 2017.

11. Defendant Steven Mueller has been a director of the Company since January 2017.

12. Defendant Michael Roemer has been a director of the Company since 2010.

13. Defendant Michael Zawadzki has been a director of the Company since January 2017.

14. Defendant Amy Nelson has been a director of the Company since June 2019.

15. Defendants Gawick, Murray, Brightman, Kennedy, Mueller, Roemer, Zawadzki, and Nelson are collectively referred to herein as the "Board."

16. Defendant Keane Group, Inc. is a Delaware corporation with its principal executive offices located at 1800 Post Oak Boulevard, Houston, Texas 77056.

17. Defendant King Merger Sub Corp. is a Delaware corporation and is a wholly owned subsidiary of Keane Group, Inc.

**JURISDICTION AND VENUE**

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) C&J is incorporated in this District.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of C&J common stock and their successors in interest and/or their transferees, except Defendants and any person, firm, trust, corporation or other entity related to or affiliated with the Defendants (the "Class").

22. This action is properly maintainable as a class action for the following reasons:

(a) The Class is so numerous that joinder of all members is impracticable. As of June 13, 2019, C&J had approximately 66 million shares outstanding.

(b) Questions of law and fact are common to the Class, including, inter alia, the following:

(i) Whether Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

      (ii)      Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

      (iii)      Whether Plaintiff and other members of the Class would suffer irreparable injury were Defendants to file an amendment to the S-4 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

      (iv)      Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

      (v)      Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)      Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)      Plaintiff's claims are typical of those of the other members of the Class.

(e)      Plaintiff has no interests that are adverse to the Class.

(f)      The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)      Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h) Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A. Background of Company and Proposed Transaction

23. C&J was founded in Texas in 1997. In 2015, C&J merged with the completion and production services business of Nabors Industries Ltd. The Company filed for reorganization under Chapter 11 of the U.S. Bankruptcy Code in July 2016, and emerged from bankruptcy in January 2017. After the Chapter 11 proceeding, C&J focused on becoming the leading oilfield services provider for onshore basins in the continental United States. The services provided by the Company include completion services, well construction and intervention services, and well support services.

24. On June 16, 2019, the Board entered into the Merger Agreement with Keane.

25. According to the press release issued on June 17, 2019 announcing the Proposed Transaction:

**Keane and C&J Energy Services to Combine in Merger of Equals, Establishing an Industry-Leading, Diversified Oilfield Services Provider**

*Highly Complementary Businesses Create One of the Largest U.S. Well Completion Services Companies*

*Enhanced Scale and Footprint in Most Active U.S. Basins Serving an Expanded Blue-Chip Customer Base*

*Expected to be Immediately Accretive to Cash Flow per Share, and to Generate Annualized Run-Rate Cost Synergies of $100 Million Within a Year After Closing*

*Strong Financial Position with Increased Liquidity and Attractive Free Cash Flow Generation Enables Platform of Innovation, Driving Increased Efficiency and Value*

*Safety-Focused, Customer-Oriented Cultures Empower Employees to Deliver Service Quality, Efficiency and Execution*

*Joining Highly Talented Workforces with a Shared Commitment to Best*

*Practices, Customer Satisfaction, Profitability and Shareholder Value Creation*

*Combined Company to Rebrand with New Name and Ticker Symbol*

*Transaction Expected to Close in Fourth Quarter of 2019*

HOUSTON – June 17, 2019 – C&J Energy Services ("C&J") (NYSE: CJ) and Keane Group, Inc. ("Keane") (NYSE: FRAC) today announced that they have entered into a definitive agreement whereby the companies will combine in an all-stock merger of equals. The combined company will be positioned as an industry-leading, diversified oilfield services provider with a pro-forma enterprise value of approximately $1.8 billion, including $255 million of net debt.

Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies and the Special Committee of the Keane Board, C&J shareholders will receive 1.6149 shares of Keane common stock for each share of C&J common stock owned. The merger agreement permits C&J to pay its shareholders a cash dividend of $1.00 per share prior to closing. Upon closing, Keane and C&J shareholders will, in the aggregate, each own 50% of the equity of the combined company on a fully diluted basis. The share exchange is expected to be tax-free.

The merger of equals will create a leading well completion and production services company in the U.S., with increased scale and density across services and geographies with a prominent presence in the most active U.S. basins. Both C&J and Keane share a commitment to safety and integrity, employee development, partnerships with blue-chip customers, technological innovation, and strong community relationships, all of which will be reflected in the operations of the combined company. On a pro-forma basis, the combined company would have approximately $4.2 billion in net revenue and approximately $636 million in adjusted EBITDA for the 12 months ended March 31, 2019. In addition, the two companies anticipate to achieve annualized run-rate cost synergies of $100 million within 12 months after closing. With approximately $173 million in cash, or $106 million after the $1.00 per share cash dividend is paid to C&J shareholders, the combined company will have flexibility to invest in growth and technology and return capital to shareholders.

"The merger of equals unites two great companies, resulting in a broader portfolio of well completion services across an even greater footprint in the U.S., benefiting our combined employees, shareholders, customers, suppliers, and the communities in which we operate," said Robert Drummond, Chief Executive Officer of Keane. "With two strong teams, enhanced and diversified operations, a strong balance sheet, ample liquidity, attractive free cash flow and a legacy of successful R&D, the combined company will be well positioned to further invest in technology and innovation, as well as the career development of our employees to drive sustainable growth in our dynamic industry. In C&J, we've found a partner who is equally committed to our strong employee culture with a focus on safety and customers, with whom we are eager to join forces to leverage our combined resources and

strengths."

Don Gawick, President and Chief Executive Officer of C&J, said, "This agreement to merge C&J and Keane underscores the highly complementary nature of our two platforms and cultures. We are excited by the many strategic and financial benefits of this combination, including the opportunities for our employees from the greater scale and enhanced capabilities of the combined company. For the customers and markets we serve, our people will continue to deliver the highest level of customer service with quality, safety, integrity and innovation. Given the shared safety focus and passion for excellence of our highly talented workforces, I am confident that the opportunity to leverage each other's strengths will enable a combined organization where the sum of both parts makes a much greater whole. Alongside our talented Keane colleagues, we look forward to expanding and deepening our service capabilities, enhancing our relationships with blue-chip customers and generating long-term, sustainable shareholder value."

**Compelling Strategic and Financial Benefits of the Merger of Equals:**

- **Greater Scale and Density Across Services and Geographies:** Together, the combined company will have 2.3 million hydraulic fracturing horsepower ("HHP") consisting of approximately 50 frac fleets, 158 wireline trucks, 81 pumpdown units, 28 coiled tubing units, 139 cementing units and 364 workover rigs, which together will create a leading U.S. well completion and production services company. The combined company will also have a larger footprint in the most active U.S. basins, including the Permian, Marcellus / Utica, Eagle Ford, Rockies / Bakken, Mid-Continent and California, among others.

- **Significant Synergies and Enhanced Opportunity for Value Creation and Investment:** The combined company expects to generate annualized run-rate cost synergies of approximately $100 million within a year after closing through cost reductions in sales, general and administrative expenses, supply chain management and optimization of operational processes. In addition, in the highly fragmented, dynamic and evolving oilfield services industry, the combined company is well-positioned to deliver enhanced shareholder returns given anticipated potential for growth and improved margins through the increased utilization of high quality, market ready equipment, synergy capture and benefits of size and scale. With these benefits and enhanced daily trading liquidity, the combination provides an attractive opportunity for equity investors.

- **Strong Financial Position:** Pro-forma as of March 31, 2019, the combined company will have approximately $173 million in cash, or $106 million after the cash dividend is paid to C&J shareholders, with pro-forma leverage of approximately 0.4x net debt to adjusted EBITDA. In addition, the anticipated $100 million of annualized run-rate synergies will enhance the future liquidity and financial flexibility of the combined company. The merger of equals will also be immediately accretive to cash flow per share and increase the potential for operating cash flow generation. Pro-forma as of March 31, 2019, operating cash flow for the combined company would be $686 million, which excludes the $100 million of expected annualized run-rate cost synergies.

- **Complementary Cultures & Operating Philosophy:** The combined company will support sustainable growth through highly complementary services including hydraulic fracturing, cementing, coiled tubing, pumpdown and workover rigs. Keane and C&J will also share best practices for customer service and operational processes, leveraging their combined resources to enhance already strong partnerships and organizational agility. The combined company's talented employees will drive exceptional customer service focused on delivering top-tier safety, efficiency and execution. Deeper penetration in critical growth markets will also broaden the combined company's blue-chip customer base to include most of the largest U.S. onshore exploration and production operators.

- **Positioned for Continued Innovation and Investment:** With a shared legacy of innovative R&D and a rich portfolio of proprietary technology, the combined company will accelerate investments in continued innovation and advanced, value-added technologies. These investments will include pursuing next generation opportunities in fracking and expanding real-time data and analytics capabilities in an effort to drive operational efficiencies, reduce Non-Productive Time (NPT), enable differentiated service to customers and lower operating costs.

**Leadership, Governance and Headquarters**

The combined company will be led by a proven management team that reflects the strengths and capabilities of both organizations. Upon close, Patrick Murray, Chairman of the C&J Board of Directors will serve as Chair of the combined company's Board of Directors, and Robert Drummond, Chief Executive Officer of Keane, will serve as President and Chief Executive Officer of the combined company.

Jan Kees van Gaalen, Chief Financial Officer of C&J, will serve as Executive Vice President and Chief Financial Officer of the combined company, and Gregory Powell, President and Chief Financial Officer of Keane will serve as Executive Vice President and Chief Integration Officer of the combined company. Additional senior executives for the combined company will be selected from top talent at both companies and named prior to the close of the transaction.

Upon completion of the transaction, the combined company's Board of Directors will comprise 12 directors, six of whom will be from the C&J Board, including the Chairman of C&J, and six of whom will be from the Keane Board, including the Chief Executive Officer of Keane. The combined company's corporate headquarters will remain in Houston, Texas.

Keane and C&J each share a deep heritage and strong brand recognition and following the closing, the combined company will operate under a new corporate name and trade under a new ticker symbol that will leverage the strengths of both brands. The combined company's corporate name and ticker will be announced prior to the close of the transaction.

**Approvals and Closing**

The transaction has been unanimously approved by the Board of Directors of C&J. The transaction has been unanimously approved by the Board of Directors of Keane, following the unanimous recommendation of its Special Committee comprising independent directors. The merger is expected to close in the fourth quarter of 2019, following C&J and Keane shareholder approval, regulatory approvals and receipt of other customary closing conditions.

Keane Investor Holdings LLC, which includes an affiliate of Cerberus Capital Management, L.P., Keane family and certain members of Keane management, owns approximately 49 percent of the outstanding shares of Keane and has entered into a support agreement to vote in favor of the transaction.

### B. The Preclusive Deal Protection Devices

26. As part of the Merger Agreement, Defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

27. By way of example, Section 7.2(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal. Section 7.2(g) demands that the Company cease and terminate all solicitations, discussions or negotiations with any party concerning an acquisition proposal.

28. Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Keane. For example, pursuant to Section 7.2(d) of

the Merger Agreement, the Company must notify Keane of any offer, indication of interest, or request for information made by an unsolicited bidder. Thereafter, should the Board determine that the unsolicited offer is superior, Section 7.2(e)(ii) requires that the Board grant Keane four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. Keane is able to match the unsolicited offer because, pursuant to Section 7.2(d) of the Merger Agreement, the Company must provide Keane with the identity of the party making the proposal and the material terms of the superior proposal, eliminating any leverage that the Company has in receiving the unsolicited offer.

29.     In other words, the Merger Agreement gives Keane access to any rival bidder's information and allows Keane a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for C&J, because the Merger Agreement unfairly assures that any "auction" will favor Keane and allow Keane to piggy-back upon the due diligence of the foreclosed second bidder.

30.     In addition, pursuant to Section 9.5(b)(ii) of the Merger Agreement, C&J must pay Keane a termination fee of $30 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the shareholders with a superior offer.

31.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide

an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any likely alternate bidder from providing the needed market check of Keane's inadequate offer price.

### C. The Materially Incomplete and Misleading S-4

32. The Individual Defendants must disclose all material information regarding the Proposed Transaction to C&J stockholders so that they can make a fully informed decision whether to vote in favor of the Proposed Transaction.

33. On July 16, 2019, Defendants filed the S-4 with the SEC. The purpose of the S-4 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, C&J shareholders cannot make a fully informed decision concerning whether or not to vote in favor of the Proposed Transaction.

*Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

34. The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of Morgan Stanley's fairness opinion, Morgan Stanley reviewed "certain internal financial and operating projections prepared by the managements of C&J and Keane, respectively." Accordingly, the S-4 should have, but failed to, provide certain information in the projections that C&J's and Keane's management provided to the Board and Morgan Stanley.

35. Notably, Defendants failed to disclose the projections for C&J and Keane for fiscal years 2019 to 2023 for: (a) depreciation and amortization; (b) EBIT; (c) unlevered taxes; (d) changes in net working capital; (e) stock-based compensation expense; (f) any other line items used in the calculation of unlevered free cash flow; and (g) unlevered free cash flow. The S-4 also

fails to disclose whether the Company or Morgan Stanley prepared the unlevered free cash flow projections. This omitted information is necessary for C&J stockholders to make an informed decision on whether to vote in favor of the Proposed Transaction.

### *Materially Incomplete and Misleading Disclosures Concerning Morgan Stanley's Financial Analyses*

36. With respect to the *Discounted Cash Flow Analysis,* the S-4 fails to disclose whether C&J's entire NOL balance was utilized during the forecast period, or if residual NOL benefit was accounted for in some other way. The S-4 further fails to disclose the implied perpetuity growth rate ranges resulting from the analysis for both C&J and Keane. In addition, the S-4 fails to disclose the individual inputs and assumptions utilized to derive the discount rate range of 12.9% to 14.9% for C&J and 11.7% to 13.1% for Keane. Finally, the S-4 fails to disclose whether Morgan Stanley treated stock-based compensation as a cash or non-cash expense in its calculation of C&J's unlevered free cash flows.

37. With respect to the *Discounted Equity Value Analysis*, the S-4 fails to disclose how, if at all, Morgan Stanley accounted for the value of C&J's NOLs in the analysis. In addition, the S-4 fails to disclose the assumed net debt and the aggregate and resulting equity values for both C&J and Keane as December 31, 2022. The S-4 further fails to disclose the individual inputs and assumptions used to derive C&J's cost of equity rate of 13.9% and Keane's cost of equity rate of 14.2%.

38. Finally, with respect to the *Trading Multiple Analysis,* the S-4 fails to disclose how, if at all, Morgan Stanley accounted for the value of C&J's NOLs in the analysis. The S-4 further fails to disclose how stock-based compensation expense was treated for C&J in the analysis. In addition, the S-4 fails to disclose whether Morgan Stanley performed any type of benchmarking analysis for C&J or Keane in relation to the selected public companies. Finally, the S-4 fails to

disclose the definition of cash flow per share as used in the analysis.

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

39. The S-4 also fails to disclose material information concerning the sales process. For example, Defendant Murray met with a director for Keane on February 7, 2019, and discussed the composition of the board of directors for a combined company. The S-4 does not disclose whether that included discussions of executive retention and employment after the Proposed Transaction closed.

40. There were a number of meetings in which certain members of the Board discussed the Proposed Transaction with members of C&J's management. The S-4 does not disclose who those "certain members" were, specifically for the meetings on February 12, 2019, March 18, 2019, and June 10, 2019.

41. Similarly, there were meetings between certain members of the Board and the special committee of the Keane board of directors. The S-4 does not disclose who those "certain members" were, specifically for the meetings on April 26, 2019, May 17, 2019, May 28, 2019, and May 29, 2019.

42. On February 20, 2019, C&J's management presented preliminary views about the financial aspects of the Proposed Transaction. The S-4 does not disclose these preliminary financial analyses.

43. Morgan Stanley provided the Board with discussions and presentations on preliminary financial analyses, yet the S-4 does not disclose that information. Specifically, the S-4 fails to disclose the preliminary discussion on C&J as a standalone business at the March 18, 2019 Board meeting; the preliminary discussion with respect to C&J as a standalone company at the April 5, 2019 Board meeting; Morgan Stanley's preliminary valuation analysis provided to the

Board on April 15, 2019; the discussions on Keane's and C&J's positions on the relative value of the combined company at the May 1, 2019 Board meeting; and the preliminary valuation analysis presented at the June 14, 2019 Board meeting.

44. In a meeting with Keane representatives on April 20, 2019, Defendant Murray discussed the Board's views of Keane's proposed exchange ratio. Yet the S-4 does not disclose what exchange ratio Keane had proposed at that time or when the Board discussed that proposed exchange ratio.

45. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Without all material information, C&J stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

46. In addition, the Individual Defendants knew or recklessly disregarded that the S-4 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

47. Specifically, the Individual Defendants undoubtedly reviewed the contents of the S-4 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the S-4 omits the material information referenced above and contains the incomplete and misleading information referenced above.

48. Further, the S-4 indicates that on June 16, 2019, Morgan Stanley reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion,

which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to C&J shareholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Morgan Stanley's financial analyses which has been omitted from the S-4, and thus knew or should have known that such information has been omitted.

49. Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

50. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

51. Defendants have filed the S-4 with the SEC with the intention of soliciting C&J shareholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the S-4, which fails to provide the material information referenced above.

52. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of C&J, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

53. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

54. Specifically, and as detailed above, the S-4 violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the financial analyses performed by Morgan Stanley in support of its fairness opinion; and (iii) the sales process.

55. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the S-4 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the S-4 states that Morgan Stanley reviewed and discussed its financial analyses with the Board during various meetings including on June 16, 2019, and further states that the Board relied upon Morgan Stanley's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the S-4, rendering the sections of the S-4 identified above to be materially incomplete and misleading.

56. The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the Class

have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

57. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58. The Individual Defendants acted as controlling persons of C&J within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of C&J and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

59. Each of the Individual Defendants was provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to the time the S-4 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The S-4 at issue contains the

unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the S-4.

61. In addition, as the S-4 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The S-4 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

62. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

63. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

### RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the Defendants jointly and severally, as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the S-4 with the SEC or otherwise disseminating an amendment to the S-4 to C&J shareholders unless and until Defendants agree to include the material information identified above in any such amendment;

C.  Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the S-4;

D.  In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.  Directing the Defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.  Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.  Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 29, 2019

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*